(58 App. Div. 304.)

### BINZEN v. EPSTEIN et al.

(Supreme Court, Appellate Division, First Department. March 8, 1901.)

1. SPECIFIC PERFORMANCE—SUFFICIENCY OF TITLE—DEFENSE—EVIDENCE.

A defense to a suit for specific performance of a contract to convey realty was that plaintiff's deed would not pass the fee to an interest, by reason of the defective execution of a power of sale under a will directing its conveyance, and the payment of part of the proceeds to certain minors. The testator before the execution of the will had made a declaration in trust, declaring that such realty was held by him to sell and divide the proceeds between himself and his two sisters, and his will directed the proceeds to be divided between his sisters and two minors. The executor, the trustee in the trust, and the sisters conveyed the realty to a grantee, who reconveyed it to one of the sisters; the consideration for such conveyances being nominal. The executor's accounting in the surrogate's court showed that an interest in the proceeds was taken out of the share of such sisters, and accounted for as money due such minors. *Held* that, though the power of sale under the will was defectively exer-

cised, the executor having accounted for the minors' share, specific performance should have been decreed.

**2. SAME—LIMITATIONS.**

Specific performance of a contract to convey realty will not be denied because of defective execution of a power of sale under a will directing a part of the proceeds of the sale to be paid to certain minors, where the latter reached their majority in 1861, and after a lapse of 40 years no attack on the execution of such power had been made by them or any one claiming under them, since the title had become perfect by the lapse of time.

Appeal from special term, New York county.

Action by Theresia Binzen against Simon Epstein and others. From a decree of the supreme court in favor of defendants on a decision rendered after trial at special term dismissing the complaint, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Charles F. Brown, for appellant.

H. H. Snedeker, for respondents.

PATTERSON, J. From a judgment dismissing the complaint in an action for the specific performance of a contract for the sale of land, and in favor of the defendant upon a counterclaim for a deposit made at the time the contract was entered into, and for the expenses of searching the title of the premises, the subject of the contract, the plaintiff appeals. The complaint contains the ordinary allegations appropriate to such an action, and the substantial defense interposed is that the plaintiff could not convey a good title in fee, as required by the contract, or could not convey a marketable title to the whole of the premises. The alleged specific objection to the plaintiff's title pointed out by the defendant is that a deed from the plaintiff would not pass in fee a one-sixth interest in the land, by reason of the defective execution of a power of sale contained in the will of one John L. Milledoler, who died in the year 1853. The case was tried at special term upon a stipulation as to the material facts, supplemented by record evidence from the surrogate's court in the county of Kings. From the stipulation it appears that on the 23d of April, 1852, Philip Milledoler and wife conveyed to John L. Milledoler, their son, 305 lots of land, as designated upon a map of property in the Twelfth ward of the city of New York, in that part of the city then known as "Harlem." Upon receiving the legal title to these lots, John L. Milledoler executed a declaration of trust in which he declared that the conveyance made to him by his parents, although in form absolute, was nevertheless received by him in trust to make sale of the property and to divide the proceeds, after the payment of a stipulated sum to his father, in the following manner: One-half to himself, one-quarter to his sister Susan Ann, the wife of Martin W. Brett, and the remaining one-quarter to his sister Cornelia, wife of John H. Graham. In the same declaration of trust it is recited that part of the property conveyed had already been sold at two public auctions. It further appears by the stipulation that John L. Milledoler died in May, 1853, leaving a last will and testament by which he appointed

Mrs. Graham, his sister, executrix, and Charles H. Thompson executor, thereof. In the will appears the following clause:

"I will and ordain that my executor and executrix of this my last will and testament, or his and her executor or executors, for and towards the performance of my said testament, shall, so soon as practicable after my decease, but without detriment, bargain, sell, and alien in fee simple all those certain lots of land situate, lying, and being at Harlem, in the city of New York, of which I stand fully seised at the time of my death; and the amount of money which shall arise and accrue from the sales of such lots of land I do give and bequeath unto the following named persons, in the following portions."

The testator then proceeds to give one-third of the amount absolutely to his sister Mrs. Graham; another third to his sister Mrs. Brett; the remaining third to his niece Helen S. Milledoler and his nephew Walter G. Milledoler, to be equally divided between them,— the share of Walter G. Milledoler to be subject to. a condition which is now unimportant. After the death of John L. Milledoler, and in December, 1853, Rosewell Graves was appointed, in the place of John L. Milledoler, trustee of the trust above mentioned.

It will be observed that under the terms of the will of John L. Milledoler no title to the land vested in his sisters or nephew or niece. They were to take as legatees, under the execution of the power of sale, the land descending to the heirs at law, subject to the execution of the power. The interests of the parties at this time were as follows: Under the declaration of trust, Cornelia Graham was entitled to one-fourth of the whole, or three-twelfths; as heir at law, one-third of one-half, or two-twelfths. Susan A. Brett, under the declaration of trust, three-twelfths; as heir at law, two-twelfths. Helen S. Milledoler and Walter G. Milledoler, each one-twelfth, or one-third of one-half, together being two-twelfths,—making in all twelve-twelfths. On December 19, 1853, Graves, trustee, Thompson, executor, Susan A. Brett, Cornelia Graham, and their respective husbands, conveyed 27 of the lots embraced in the declaration of trust to Margaret Ann Brett. On June 29, 1854, Margaret A. Brett conveyed the lots to Cornelia Graham. The premises embraced in the contract of sale in this action are included in the last-mentioned conveyance. At that time Helen S. Milledoler and Walter G. Milledoler were infants over the age of 14 years, and, as the stipulation shows, of sound mind. The conveyances to Margaret Ann Brett and from her to Mrs. Graham are for a nominal consideration. It appears that Walter G. Milledoler made a conveyance to Augusta C. Graham, and, if he had any interest in the premises, it passed by that conveyance. Helen S. Milledoler lived until the year 1891, when she died, leaving five children her surviving.

It is now claimed by the defendant that there was an imperfect execution of the power of sale contained in the will of John L. Milledoler; that the conveyance to Margaret Ann Brett and from her to Mrs. Graham for a nominal consideration in both instances was evidently only a method of putting the title to the premises in Mrs. Graham, and therefore there was never a valid execution of the power of sale, and that Mrs. Graham, the executrix, taking the title of the infants in that manner, and without the payment of an actual valuable consideration, a presumption of bad faith is raised; and

that it is still open to the nephew and niece of John L. Milledoler, or their successors in interest or representatives, to avoid the conveyance to Mrs. Graham.

Although there may have been a technical defective execution of the power of sale, yet it is made to appear by record evidence that the legacies intended by the testator, John L. Milledoler, for his nephew and niece, were provided for and presumptively paid by the executor of his will. There is no doubtful or disputable matter of fact depending upon testimony of witnesses which can be assigned as a reason for declaring the plaintiff's title unmarketable.

How many lots remained unsold in May, 1854, does not appear, but on or prior to May 17, 1854, 65 lots had been sold, for which a net sum of $18,506 has been received by Thompson, executor of John L. Milledoler. On May 10, 1854, 27 unsold lots were conveyed to Mrs. Graham, and 29 to Mrs. Brett. The infants were entitled to an undivided one-twelfth interest in the proceeds of the lots thus conveyed. It is claimed by the plaintiff, and, we think, shown by the evidence, that the value of the interest of the infants in proceeds that might have arisen from a sale of the lots conveyed to Mrs. Graham was secured to them by crediting to them an amount deducted from the share of Mrs. Graham in the proceeds of the land sold for cash; the value of the land conveyed to Mrs. Graham being fixed at the price received by the executor on the cash sales made almost contemporaneously with the conveyance to Mrs. Graham. If the proof sustains this claim, then it is apparent that the infants' interest was paid for. There was admitted in evidence a decree of the surrogate of the county of Kings made upon an accounting of Thompson, executor. The account settled by that decree is of the proceeds in cash of the lots sold and conveyed to others than Mrs. Brett and Mrs. Graham, and it shows that one-twelfth interest in the proceeds of the sale of the 65 lots was taken out of the share of Mrs. Graham, and was accounted for as part of moneys due to the infants. This seems to result indisputably from the account as settled by the surrogate's decree. Mrs. Graham's full share, according to the interest she had in the moneys accounted for by the executor, was five-twelfths. By the decree as settled she received one-third, or four-twelfths, and Mrs. Brett, who was entitled to five-twelfths, was credited with only one-third, or four-twelfths; and the amounts deducted from their shares were transferred in enhancement of those of the infants, and are a little in excess of the shares which would have been received by the infants had the lots conveyed to Mrs. Graham and Mrs. Brett been actually sold for cash at the same rate at which the 65 lots were sold at about the same time. It is intimated in the opinion of the court below, and it is suggested on this appeal, that there is nothing to show that the moneys credited to the infants in the executor's account in excess of what they were actually entitled to resulted from the transfer of lands to the executrix. But we think it follows from the very nature and statement of the account itself, in connection with the stipulated facts, that the allowance to the infants could not have been for any other reason or object than to pay them for their interest in the lots conveyed to Mrs. Graham and her

sister. From the record evidence thus made, it appears that the interest of the infants in the lands conveyed to Mrs. Graham was bought and paid for. The executor's account was settled by the decree, and therefore the infants' money was held by the executor. The decree of the surrogate was binding upon all persons who were duly cited. Only a portion of the decree is printed in the record, and, while the surrogate's court is one of limited jurisdiction, doubtless that court acquired jurisdiction over the infants in the proceeding for the executor's accounting. We must assume as much in this case, because the portion of the decree relating to the accounting came into the case without objection, and its admission in evidence under such circumstances presupposes the existence of jurisdictional facts which would make it competent evidence.

But, if our conclusions above referred to concerning a consideration being paid for the infants' interest are incorrect, we are of the opinion that the conveyance to Mrs. Graham of the infants' interest became indefeasible by lapse of time. That conveyance was made in 1854. The two infants, then being over 14 years of age, attained their majority about 1861. For 40 years no attack has been made upon Mrs. Graham's title by them or either of them, or any one claiming under them or either of them. In this phase, we think the case falls within the principle upon which were decided the cases of Harrington v. Bank, 101 N. Y. 258, 4 N. E. 346; Kahn v. Chapin, 152 N. Y. 305, 46 N. E. 489; and Strauss v. Bendheim, 162 N. Y. 469, 56 N. E. 1007. We do not regard this as a case in which there is a defect which can be cured only by a resort to parol evidence, or in which there is a chance that some person may raise a question affecting the title, or a doubtful question of law, in the absence of some one in whom an outstanding right is vested. The judgment should be reversed, and, as it is evident that the facts cannot be changed upon another trial, judgment in favor of the plaintiff, requiring specific performance of the contract by the defendant, should be entered, with costs.

Judgment reversed, and judgment ordered for plaintiff, with costs. All concur.